# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JOHN B. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-00689-CV-RK |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

**Discussion**

By way of overview, Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the right shoulder; affective disorder; and anxiety disorder. The ALJ also determined that Plaintiff has the following non-severe impairments: hypertension; history of gastroesophageal reflux disease (GERD); and headaches. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404. Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except Plaintiff cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead with the right upper extremity; and can perform simple, routine tasks with occasional interaction with others, such as supervisors, coworkers, and the general public. Although the ALJ found Plaintiff was unable to perform any past relevant work, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

Plaintiff presents the following arguments on appeal: (1) whether the ALJ properly assessed the RFC on a function-by-function basis and whether he erroneously assessed exertional levels first; (2) whether the ALJ properly weighed treating provider Dr. Lawrenzi's opinion and nurse Boyd's opinion, (3) whether the ALJ's RFC determination is supported by substantial evidence regarding Plaintiff's physical impairments and mental impairments; and (4) whether the ALJ sustained his burden at step five.

First, substantial evidence supports the functional abilities and limitations included in the RFC determination. Plaintiff argues the ALJ erred by listing the exertional level first in the RFC and failing to include all functional limitations in the RFC. Plaintiff relies on three cases in support of his position, but all three cases are distinguishable.[1] The ALJ is not required to address every

---

[1] Plaintiff relies on *Hayes v. Astrue* to support his contention that the RFC's functional limitations were insufficient to account for Plaintiff's limitations. 2012 WL 393406, at *5 (W.D. Mo. Feb. 6, 2012). However, *Hayes* is distinguishable because no functional limitations were presented in the *Hayes* RFC, but here, the ALJ presented functional limitations in the RFC.

Plaintiff's reliance on *Brown v. Astrue* is similarly displaced. 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010). In *Brown*, the ALJ failed to include limitations in the RFC as to conditions resulting from the plaintiff's stroke and peripheral neuropathy, and the medical record clearly indicated limitations would

functional limitation; instead, the ALJ only need address limitations that result from the individual's medically determinable impairments. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (the ALJ did not make "specific findings . . . as to sitting, standing, and walking, [and] we do not believe that he [ALJ] overlooked those functions . . . the record reflects that the ALJ implicitly found that [claimant] was not limited to these areas . . . all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited"). Here, the ALJ found no restrictions concerning Plaintiff's ability to sit or walk; therefore, the ALJ did not err by not including sitting or walking restrictions in the RFC.

Next, substantial evidence supports the ALJ's decision to give treating provider Dr. Lawrenzi's opinion little weight because: (1) the portion of Dr. Lawrenzi's opinion stating the claimant cannot be gainfully employed is not a medical opinion and instead reserved for the ALJ; (2) Dr. Lawrenzi's opinion did not provide any specific functional limitations regarding Plaintiff's ability to work; and (3) his opinion is inconsistent with his treatment notes stating Plaintiff has only "mild" degenerative disc disease. *See Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (a medical source opinion that Plaintiff is "disabled" or "unable to work" is an issue reserved for the ALJ); *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) ("the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence") (citations and quotations omitted); *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (affirming the ALJ's decision "to discount or even disregard the opinion of a treating physician where other medical assessments are supported by

---

result from the stroke and peripheral neuropathy regarding the plaintiff's ability to reach, pull, and handle items. *Id.* Therefore, the Court determined that the ALJ's silence regarding the plaintiff's reaching, pulling, and handling limitations, despite the medical record suggesting otherwise, meant the ALJ had not considered these limitations. *Id.* Here, unlike *Brown*, while the ALJ is silent regarding sitting or standing limitations, the medical record does not suggest Plaintiff's sitting or standing abilities would be limited.

Finally, Plaintiff's reference to *Proffitt v. Astrue* is unavailing. 2009 WL 315690, at *3 (Feb. 6, 2009). In *Proffitt*, the ALJ did not address the plaintiff's ability to sit, stand, or walk, and the Court determined the medical evidence "clearly substantiates a lower extremity impairment" such that remand was necessary to include this lower extremity limitation in the RFC. *Id.* However, here the medical evidence does not substantiate a requirement that a specific limitation resulting from an impairment is required in the RFC.

better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions") (internal citations and quotations omitted).

Next, substantial evidence supports the ALJ's RFC concerning Plaintiff's physical impairments. Plaintiff argues the ALJ had a duty to develop the record concerning limitations stemming from Plaintiff's physical impairments. However, the ALJ was not required to develop the record further or seek additional medical opinions because the record provided sufficient information for the ALJ to determine whether Plaintiff was disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled"). The medical record and testing indicates: (1) Plaintiff reported improvement in sleep disturbances in February 2015 and no sleep disturbances at all in November 2015; (2) Plaintiff has not required any aggressive care or emergency treatment for physical symptoms nor have his providers recommended such measures; (3) Plaintiff is able to perform extensive activities of daily living including: preparing simple meals, watching television, driving a car, and maintaining proper grooming and hygiene; (4) physical examinations show Plaintiff moves all extremities normally; (5) an MRI indicated no significant central spinal canal or neural foraminal stenosis at any level; and (6) Plaintiff indicated his low back pain is "much better controlled" with a new medication regimen and he was satisfied with the level of pain control. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016) (the ALJ was not required to seek additional information from treatment providers where the information from the medical source did not list specific functional limitations, and the plaintiff's medical records, function reports, and testimony indicated plaintiff was able to perform work). Accordingly, substantial evidence supports the ALJ's RFC determination concerning Plaintiff's physical impairments.

Next, substantial evidence supports the ALJ's RFC determination concerning Plaintiff's mental impairments. Despite Plaintiff's argument, the ALJ's RFC restriction limiting Plaintiff to simple routine tasks was sufficient to account for Plaintiff's moderate restriction in concentration, persistence, or pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (plaintiff's deficiencies in concentration, persistence, or pace were adequately captured in an RFC restriction limiting plaintiff to simple, routine, repetitive tasks). Next, the ALJ appropriately weighed Advanced Practice Registered Nurse (APRN) Boyd's opinion concerning Plaintiff's mental

4

functional abilities.  The ALJ gave Ms. Boyd's opinion little weight because her opinion was inconsistent with her own treatment notes and the overall medical evidence;[2] Ms. Boyd's opinion provided a disability determination, which is left to the Commissioner to decide;[3] and Ms. Boyd is not an acceptable medical source.[4]

Next, the ALJ appropriately considered and discounted Plaintiff's GAF score of 45 when the ALJ formulated the RFC.  *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (a GAF score "is a subjective determination that represents the physician's judgment of the [plaintiff's] overall level of functioning") (citations omitted); *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (while "GAF scores may be relevant to the determination of disability based on mental impairments, an ALJ may afford greater weight to medical evidence and testimony than to GAF scores") (citations and quotations omitted).  The ALJ discounted the GAF score because it was significantly based on the Plaintiff's subjective complaints rather than from objective testing and inconsistent with Plaintiff's ability to complete a variety of activities of daily living.

Finally, substantial evidence supports the ALJ's determination at step five that jobs exist in the national economy that Plaintiff is able to perform considering his RFC, age, education, and work experience.  Plaintiff argues an unresolved inconsistency exists between the hypothetical provided to the vocational expert and the RFC.  Specifically, Plaintiff argues the vocational expert incorrectly opined that Plaintiff is able to perform the work of small parts assembler (DOT 706.684-22) because the job of small products assembler "frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker," but Plaintiff's RFC restricts him to only occasional interaction with coworkers.[5]  The Court declines

---

[2] Ms. Boyd opined that Plaintiff had marked limitations.  However, Ms. Boyd's medical findings indicate that Plaintiff's thoughts are linear and well-organized, he is oriented, has good insight and judgment, is not suicidal, and is sleeping better.  Further, she makes no referrals for more aggressive care.  Ms. Boyd's opinions are also inconsistent with the overall record that found Plaintiff has not required any aggressive, psychiatric hospitalization, or emergency treatment for mental symptoms nor have his providers recommended such measures.  Finally, Plaintiff is able to perform extensive activities of daily living.

[3] Ms. Boyd opined that Plaintiff would be absent from work three times a month and there "was no possibility for this patient to engage in meaningful work on a continuous basis." (Doc. 7-3.)

[4] *Treadway v. Colvin*, 2016 U.S. Dist. LEXIS 28329, at *70 (E.D. Mo. Mar. 7, 2016).  However, APRN's are considered acceptable medical sources in cases filed after March 27, 2017.  20 C.F.R. § 404.1502.

[5] The Department of Occupational Titles' description for a Small Products Assembler is, "[p]erforms any combination of following repetitive tasks on assembly line to mass produce small products . . . . Frequently works at bench as member of assembly group assembling one or two specific parts and

to address the inconsistency issue because, despite any alleged error, Plaintiff does not dispute that other jobs exist in significant numbers in the economy that Plaintiff can perform.  The vocational expert testified Plaintiff is also able to perform the following jobs: (1) price maker with 280,000 jobs in the United States and (2) inspector/hand packager with 38,000 jobs in the United States.  Accordingly, substantial evidence supports that the ALJ's decision that Plaintiff can perform work in the national economy.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision.

IT IS THEREFORE, ORDERED that the decision of the ALJ is **AFFIRMED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  September 4, 2018

---

passing unit to another worker . . . May be assigned to different work stations as production needs require." DOT 706.684-022.